UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

77 CHARTERS, INC.,

                          Plaintiff,
                                              REPORT AND
              - against -                     RECOMMENDATION

SYC REALTY LLC et al,                         CV 2010 01681 (SLT)(MDG)

                          Defendants.

- - - - - - - - - - - - - - - - - - -X


        77 Charters, Inc. ("plaintiff") commenced this action against

defendants SYC Realty LLC, 218 North Group LLC, 243 North Group LLC,

261 Development Group LLC, Israel Perlmutter, Menachem Stark and

Eugene Mendlowitz ("defendants") to collect on a mortgage note (the

"Note") and the corresponding guaranty.  By order dated October 4,

2010, the Honorable Sandra L. Townes referred plaintiff's motion for

default judgment to me for a report and recommendation on damages.

By letter filed on December 14, 2010, defendants challenged the

efficacy of service upon them that this Court has treated as a motion

for vacatur of the Clerk of Court's notation of default.  For the

foregoing reasons, I recommend that defendants' motion be denied and

that plaintiff be awarded default judgment as set forth below.


                    FACTS AND PROCEDURAL HISTORY

        The plaintiff in this action seeks to recover the balance due

on a mortgage note for $2,500,000 which Mr. Perlmutter, Mr. Stark

and Mr. Mendlowitz ("the individual defendants") executed on

September 4, 2008 on behalf of defendants SYC Realty, 218 North Group LLC, 243 North Group LLC and 261 Development Group (the "corporate defendants") and individually guaranteed. See Compl. (ct. doc. 1) ¶ 1. The Note required monthly interest payments of $29,166.67 until October 1, 2009, when the entire principal amount became due (the "Maturity Date"). After defendants executed the Note and guarantees in favor of Paradigm Credit Corporation ("Paradigm"), Paradigm assigned a 92% interest in the debt to plaintiff on the same date. See id. ¶ 12, Exs. A, B, C. Paradigm also transferred its remaining 8% interest in the Note to Amina Tawfik, who later assigned her interest and rights in the debt to plaintiff on March 19, 2010. See id. ¶ 13, Exs. D, E, F. According to Samer Tawfik, president of 77 Charters, when the Note matured on October 1, 2009, the defendants owed the entire sum of the principal; payments of interest for July, August and September; $8,750.00 in penalties; and $200 in bank fees for a returned check.[1] See ct. doc. 12, Samer Decl. On December 10, 2009, Paradigm sent a Notice of Default to the corporate defendants notifying them of their default under the Note and the assignment of the debt to plaintiff and Ms. Tawfik. Ct. doc. 18, Ex. A.

Plaintiff filed the Complaint on April 15, 2010. Ct. doc. 1. In several affidavits of service, process server Caswell Bryan swore that between April 21, 2010 and April 22, 2010, he had hand delivered

---

[1] Plaintiff subsequently revised its claim for three months of missed interest payments, conceding that defendants had paid most of that amount and agreeing to credit defendants for those three months. See infra at 29-30.

true copies of the complaint and summons to the individual defendants and served the corporate defendants by serving Mr. Perlmutter and Mr. Mendlowitz, who both stated that they were authorized to accept service on behalf of the businesses. <u>See</u> ct. doc 3. After all defendants failed to answer or otherwise respond to the complaint, plaintiff moved for entry of default on June 23, 2010. <u>See</u> ct. docs. 5-11. The Clerk of Court noted entry of default against defendants on July 13, 2010 pursuant to Federal Rule of Civil Procedure 55(a). Plaintiff followed with a motion for default judgment on September 30, 2010, sending a copy of the motion to defendants via first class mail. <u>See</u> ct. doc. 12. Following Judge Townes's referral, by order dated October 6, 2010, this Court set a briefing schedule on the issue of attorneys' fees and directed plaintiff to serve a copy of the order immediately upon the defendants. <u>See</u> ct. doc. 14. On October 20, 2010, plaintiff filed a supplemental motion for attorneys' fees. <u>See</u> ct. doc. 15.

On December 14, 2010, Leo Fox, counsel for defendants, filed a letter claiming that service was deficient because copies of the complaint and default motion were served at different addresses for some of the defendants, the individual defendants did not receive the summons and complaint, the default motion was sent to outdated addresses of the corporate defendants and plaintiff failed to serve defendants with the supplementary motion for attorneys' fees. <u>See</u> ct. doc. 16 at first of 17 unnumbered pages. Defendants also claim that they have several meritorious defenses.

In its response, plaintiff admits that it failed to serve the supplementary motion for fees on defendants, but otherwise contends it properly served the defendants with both the complaint and the default motion and that defendants had notice of filing of the complaint and the default judgment.  See ct. doc. 18 at 4-5.

## DISCUSSION

Rule 55(a) of the Federal Rules of Civil Procedure confers on courts the discretion to enter default judgment against a party for failure to "plead or otherwise defend."  Fed. R. Civ. P. 55(a). While recognizing that defaults "play a constructive role in maintaining the orderly and efficient administration of justice," Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993), the Second Circuit generally disfavors defaults because of its strong preference for resolving trials on the merits.  See, e.g., Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 172 (2d Cir. 2001); Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996); Enron, 10 F.3d at 95.  However, when "a litigant is confronted by an obstructionist adversary," Enron, 10 F.3d at 96, or the defendant causes continued uncertainty and delay in an action, default judgment is appropriate.  See 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2681 (1998).

Dispositions of default judgments are left to the sound discretion of the district court.  See State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 166 (2d Cir. 2004); see also Enron, 10 F.3d at 95 ("[The] district court . . . is in the best

position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties"). However, a default judgment is a "weapon of last, rather than first, resort, [and] should only be imposed upon a serious showing of willful default." Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1982) (internal quotations and citations omitted).

Rule 55(c) provides that "[f]or good cause shown the court may set aside an entry of default." Fed. R. Civ. P. 55(c). In determining whether to vacate a default, a court should consider (1) whether the default was willful; (2) whether setting aside the default would prejudice the plaintiff; and (3) whether the defendant has a meritorious defense. See, e.g., State St. Bank, 374 F.3d at 166-67; Pecarsky, 249 F.3d at 171; S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998). A court may also consider whether the default was made in good faith and whether the default would bring about a harsh or unfair result. Enron, 10 F.3d at 96. Because defaults are viewed with disfavor, any doubts should be resolved in favor of the party seeking relief from the default. See, e.g., Enron, 10 F.3d at 95-96; Davis, 713 F.2d at 915.

A.    Willfulness

A finding of willfulness requires a showing that the defaulting party engaged in deliberate or egregious conduct. Am. Alliance, 92 F.2d at 61. In finding that the default was willful, the court must be persuaded that the defendant made a strategic decision and deliberately chose not to appear. See Pecarsky, 249 F.3d at 173.

Mere negligence or carelessness is insufficient for a finding of willfulness.  See, e.g., Am. Alliance, 92 F.2d at 60 (finding default due to misfiling of complaint for two months was not willful, but grossly negligent); Brien v. Kullman Indus., Inc., 71 F.3d 1073, 1078 (2d Cir. 1995) (finding defendant's failure to file answer was not willful, because he "incorrectly assumed that the answer was to be filed after the petition for removal was granted").

Defendants argue that their default was not willful because, although they were engaged in settlement negotiations with plaintiff's former and current counsel, they did not receive notice of the lawsuit or a copy of the summons and complaint.  However, e-mails exchanged between counsel, which are attached to both parties' submissions, clearly establish that defendants received multiple warnings of the existence of this suit and of plaintiff's intention to proceed with litigation in light of stalled settlement negotiations.  In an e-mail dated May 3, 2010, Mr. Barry Felder, plaintiff's former counsel, informed defendants that they have "been served and [their] time to respond to the complaint is running."  See ct. doc. 18, Ex. C at 1.  In an e-mail dated July 13, 2010, Mr. Joseph Ruta, plaintiff's current counsel, advised Mr. Stark that he has been retained and that default had been entered against defendants.  Id., Ex. D at 1.  A week later, in an e-mail dated July 20, 2010, Mr. Ruta informed Mr. Stark that plaintiff would move for default judgment if defendants did not provide financial information for settlement.  Id., Ex. D at 2.  An e-mail from Mr. Stark to Mr. Ruta dated August 10, 2010 confirms that Mr. Stark was aware of Mr.

Ruta's involvement in the case.  Id., Ex. D at 5.  Other e-mails also suggest that defendants significantly slowed the pace of settlement talks by repeatedly failing to produce financial disclosures on the schedule agreed upon by the parties.  See id. at 1, 2, 3, 4, 8.  In addition, although Mr. Stark claims in defendants' motion to vacate that he did not speak with Mr. Felder until July 2010, ct. doc. 16 at 9 (part of Stark Aff.), his statements are belied by e-mails produced by plaintiff, as well as defendants' own statements that Mr. Stark had been in contact with Mr. Felder since March 2010.  Ct. docs. 18, Ex. C; 20 at 2.  In several of the e-mails produced by plaintiff's counsel, Mr. Ruta informed Mr. Stark that he planned to proceed with litigation if settlement was unsuccessful.  Ct. doc. 18, Ex. D at  1, 2, 6, 8.  The last such e-mail produced by plaintiff is dated September 10, 2010.

Thus, where, as here, defendants move to vacate a default judgment "based on improper service of process where defaulting defendant[s] had actual notice of the original proceeding but delayed in bringing the motion, the defendant bears the burden of proof to establish that the purported service did not occur."  Burda Media, Inc. v. Viertel, 417 F.3d 292, 299 (2d Cir. 2005).  As a preliminary matter, a process server's affidavit of service creates a presumption of proper service, which can be rebutted by a sworn denial of service by defendant.  See Old Republic Ins. Co. v. Pac. Fin. Servs. of America, Inc., 301 F.3d 54, 57 (2d Cir. 2004).  No evidentiary hearing is required upon a defendant's denial of service if the defendant "fails to swear to specific facts to rebut the statements

in the process server's affidavits." Old Republic, 301 F.3d at 58 (internal citation omitted).

In his affidavits of service, Mr. Bryan states that he personally delivered the summons and complaint to each of the individual defendants and the various individual defendants acknowledged that they were authorized to accept service for the corporate defendants. He also provides specific descriptions of the individual defendants served. See ct. doc. 3. He states that Mr. Perlmutter is a 35 to 45 year-old white male with brown hair between 5 feet, 10 inches and 6 feet in height and weighing between 170 and 180 pounds. He describes Mr. Stark as a 40 to 50 year-old white male with brown hair between 5 feet, 5 inches and 5 feet, 7 inches in height and weighing between 165 and 175 pounds. He states that Mr. Mendlowitz is a 40 to 50 year-old white male with brown hair between 5 feet, 7 inches and 5 feet, 9 inches in height and weighing between 170 and 180 pounds. The individual defendants do not contest the descriptions given, nor do they dispute that they are authorized to receive service for the individual corporations named.

Instead, each individual defendant simply denies that he received the summons and complaint. Ct. doc 16 at 6-7 (¶ 2) (part of Stark Aff.), 12-13 (¶ 2) (part of Perlmutter Aff.), 15 (¶ 2) (part of Mendlowitz Aff.). Mr. Stark declares that he is "never home at that time" service was made -- 7:12 a.m. -- because he attends Synagogue services that start at 7:00 a.m. and he is "always early." Id., Stark Aff. ¶ 2. Neither Mr. Perlmutter nor Mr. Mendlowitz make any further explanation other than Mr. Perlmutter's unexplained assertion

that the process server's "affidavit itself establishes that [he] was not served." Ct. doc. 16 at 13-14 (¶ 2) (part of Perlmutter Aff.).

I find on this record that defendants fail to carry their burden of proving that proper service did not occur. None of the statements contained in their affidavits rise to the level of "specific facts" capable of rebutting the presumption of service created by Mr. Bryan's sworn affidavits. Defendants "failed to substantiate [their] claim that [they] were not at the place of service when service was made" by failing to establish, for example that they did not reside at those addresses, that Mr. Bryan proffered an incorrect physical description of them or that they were not at home at the specific date and time listed on the service affidavits. Nyctl 1997-1 Trust v. Nilas, 288 A.D.2d 279, 279, 732 N.Y.S.2d 872, 873 (2d Dept. 2001); see also Old Republic, 301 F.3d at 58; Garcia v. Maersk, Inc., 2005 WL 1492380, *3 (E.D.N.Y. June 24, 2005).

Although Mr. Stark states that is "always early" for Synagogue services, starting at 7:00 a.m., he did not clearly state that he was not home at 7:12 a.m. on April 22, 2010 when Mr. Bryan claims service was made. The Third Department found that a similarly unspecific denial of service was insufficient to overturn the presumption of service established by the process server's sworn affidavit where a defendant "merely stat[ed] that the summons and complaint in this action were served during June 1992 and that defendant moved from [the place where he was served] during July 1975, has never returned, and did not reside [at that place] at the time of service." New York State Higher Educ. Servs. Corp. v. De John, 224 A.D.3d 904, 904, 638

N.Y.S.2d 523, 523 (3d Dep't 1996); see also Roberts v. Anka, 45
A.D.3d 752, 754, 846 N.Y.S.2d 280, 282 (2d Dep't 2007) (finding
insufficient a denial of service made upon a woman at defendant's
residence where defendant merely stated that no female relative
resided there).

Defendants' bare assertions in these actions are clearly
distinguishable from cases where courts have held that a defendant's
denial of service is sufficient to rebut the presumption of service.
In one such instance, defendant provided a sworn declaration that he
was not home on the day in question at the alleged time of service
because he was running errands and shopping, statements that prompted
a state court to quash papers served on him because they raised
specific facts sufficient to rebut the presumption of service, and
required an evidentiary hearing. See Musler, 713 F.2d at 914.
Similarly, the Second Department found that a defendant successfully
challenged service upon her sworn declaration that she had never
resided at the address where process was served and an affidavit from
the resident at that address that neither she nor her family had ever
resided there. Engel v. Boymelgreen, 80 A.D.3d 653, 655, 915
N.Y.S.2d 596, 598 (2d Dep't 2011). Therefore, I find that defendants
were properly served with the summons and complaint.

Defendants also argue that their default was not willful because
they were engaged in settlement negotiations with plaintiff before
and during the pendency of the lawsuit. See ct. doc. 20 at 2.
Although defendants did not provide any authority to this effect,
courts have held that in some circumstances, a defendant's default

should not be construed as willful when he has engaged in good faith ongoing settlement negotiations with the plaintiff and did not receive actual notice of the filing of a summons and complaint or a default motion. See, e.g., Coach, Inc. v. O'Brien, 2011 WL 3462317, *3 (S.D.N.Y. July 27, 2011); Carey v. Int'l Consol. Co., Inc., 2009 WL 4891812, *2 (E.D.N.Y. Dec. 11, 2009); Deutsche Bank Nat. Trust Co. v. Gillio, 22 Misc.3d 1131(A), *3, 881 N.Y.S.3d 362 (Table) (N.Y. Sup. 2009). As discussed, however, there is ample evidence in the present case that defendants had actual notice of the lawsuit.

Defendants also assert that the motion should be vacated because they were not properly served with plaintiff's motion for default or served with the supplementary motion for attorneys' fees. Ct. doc. 16 at 1, 6, 9-10 (part of Stark Aff.); ct. doc. 20 at 1-2. It is true that the individual practices of some judges may require that plaintiff serves a motion for default judgment by the same method as the summons and complaint. See Gold Medal Produce Inc. v. Ricosu Tropical Prods, Inc., 2010 WL 2267728, *1 (S.D.N.Y. May 28, 2010). This is not a requirement of the Federal Rules, this particular district[2] or the district or magistrate judge assigned to this case.

The individual defendants do not appear to object to service of the default motion to their residential addresses. They argue, instead, that all papers, beginning with Paradigm's Notice of Default, that were addressed to the corporate defendants were sent to

_____

[2] In fact, this Court's Civil Rules committee notes in discussing Local Civil Rule 55.2, adopted by this Court on July 11, 2011, that Fed.R.Civ.P. 55(b) does not require service of notice of an application for default judgment upon a party who has not appeared.

incorrect addresses.  Defendants attach to their vacatur motion a letter dated September 1, 2009 that was purportedly sent by defendant SYC Realty to Paradigm, alerting the recipient of SYC Realty's change of address.  See ct. doc. 16 at 16 (Ex. A).

This argument fails as a matter of law.  Under paragraph 2.3 of the Note, the defendants expressly waived their right to notices of default as follows:

> All parties hereto, whether Maker, principal, surety, guarantor or endorser, hereby waive demand, notice of demand, present for payment, notice of dishonor, protest and notice of protest.

Ct. doc. 12, Ex. A.  Likewise, there is no requirement in the Federal Rules that papers in an action be served upon parties who have not appeared, as discussed above.  See Fed.R.Civ.P. 5(a)(2).

Even if there were a requirement under the Note for notice, defendants have not established that the notices were sent to the wrong address.  The defendants' purported notice of the change of address for SYC Realty is deficient in several respects.  The defendants' letter, which is addressed to "To whom it may Concern," does not state the names or address of the intended recipient, nor does the letter identify any specific person or department in Paradigm that would be a proper party to handle the notice.  Furthermore, defendants provide no receipt to show that the notice of change of address was mailed by overnight delivery or by registered or certified mail, as required by the terms of the Note.  Ct. doc. 1, Ex. A at ¶ 9.

Defendants also argue that Paradigm should have noticed from the December 2009 check of SYC Realty that the address of the corporate defendants had changed.[3]  This argument fails because New York law[4] is clear that the payor's changed address on a check is insufficient to alert the payee of an address change.  See Am. Transit. Ins. Co. v. Brown, 66 A.D.3d 447, 448-449, 886 N.Y.S.2d 399, 400 (1st Dep't 2009), rev'd on other grounds; Kennedy v. Mossafa, 291 A.D.2d 378, 375-76, 737 N.Y.S.2d 373, 380 (2d Dep't 2002).  Furthermore, both of these notifications pertain only to SYC Realty; there is no evidence that defendants provided any notice to plaintiff or Paradigm of a change of address for any of the other corporate defendants.

As plaintiff notes, its counsel mailed the default motion papers to the addresses listed for the corporations on the website for the New York Secretary of State.  It is well established that it is the responsibility of a corporation to update the addresses filed with the Secretary of State and that a corporation that has failed to do

---

[3] Plaintiff mailed the default motion to the corporate defendants at 80 Clay Street for 261 Development, 390 Berry Street for SYC Realty and 138 Ross Street, c/o Perl (Mr. Perlmutter is identified as "Israel Perlmutter aka Sam Perl" in the Note and the Guaranty) for 243 North and 218 North.  Defendants assert that the correct address for the corporations is 331 Rutledge Street.

[4] Because this is a diversity case, New York choice of law rules require that the law "of the jurisdiction having the greatest interest in the litigation controls."  Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 139 (2d Cir. 1991). However, because parties "have assumed from the outset that New York law governs," have not addressed choice of law and apparently have not suggested that any other state has significant contacts to this dispute, I will examine the issues according to New York law.  Id.; see also Societe d'Assurance de l'Est SPRL v. Citigroup Inc., 2011 WL 4056306, *4 (S.D.N.Y. Sept. 13, 2011).

is responsible for its failure to receive notice of judicial filings. See, e.g., Abondolo v. Jerry WWHS Co., Inc., 2011 WL 6012504, *3 (E.D.N.Y. Dec. 1, 2011); Trustees of Local 531 Pension Fund v. Am. Indus. Gases, Inc., 708 F.Supp.2d 272, 276 (E.D.N.Y. 2010); Estrella v. P.R. Painting Corp., 2006 WL 3359485, *2 (E.D.N.Y. 2006); FGB Realty Advisors, Inc. v. Norm-Rock Realty Corp., 227 A.D.2d 439, 439, 642 N.Y.S.2d 696, 697 (2d Dep't 1996).

Although not explicitly asserted by defendants, under New York law, a defendant may be entitled to vacatur of a default judgment where it did not receive actual personal notice of the filing of a complaint, such as where plaintiff served defendant solely via the Secretary of State at an outdated address. See N.Y. C.P.L.R. § 317; Eugene Di Lorenzo, Inc. v. A.C. Dutton Lumber Co., Inc., 67 N.Y.2d 138, 141-42, 501 N.Y.S.2d 8, 10-11 (1986); Nouveau Elevator Indus., Inc. v. Continental Casualty Ins. Co., 2006 WL 1720429, *5 (E.D.N.Y. June 21, 2006); Calderon v. 163 Ocean Tenants Corp., 27 A.D.3d 410, 410-411, 811 N.Y.S.2d 428, 429 (2d Dep't 2006). Even if these cases could be applied to service of the default motion, the present situation is clearly distinguishable. Plaintiff hand delivered copies of the summons and complaint on the individual defendants, who do not dispute they are the principals of the corporate defendants and notified defendants by e-mail of the filing of the complaint at the latest by May 3, 2010, more than a week before responses were due. See ct. doc. 3; ct. doc. 18, Ex. C at 1. Therefore, I find that plaintiff properly served defendants with notice of the default

motion.  See LaBarbera v. Hardin Contracting Inc., 2010 WL 148084, *2
n. 1 (E.D.N.Y. Jan. 13, 2010) (finding that defendant was properly
served with a briefing order where it was mailed to the address
listed on the New York Division of Corporations website).

Finally, although plaintiff admits that it failed to mail its
supplementary papers supporting its application for attorneys' fees
to defendants, as ordered by this Court, this lapse does not alter
the willfulness analysis.  Defendants had ample notice of the pending
default in the e-mail exchanges attested to by both parties and they
have not successfully challenged service of either the summons and
complaint or the default motion papers.

This Court finds that because defendants were properly served
with the necessary papers in this case and were in regular
communication with plaintiff's counsel, they had sufficient notice of
the filing of this lawsuit, the entry of default and plaintiff's
motion for default judgment.  Defendants' failure to appear in this
case for eight months —- five of those after the Clerk's entry of
default -- in spite of plaintiff's repeated warnings that it would
proceed with the litigation, and defendants' dilatory participation
in settlement discussions, strongly suggest willfulness on the part
of defendants.  See, e.g., S.E.C. v. McNulty, 137 F.3d 732, 738
(finding default willful where plaintiff sent defendant several
letters warning him of the consequences of failing to respond to the
complaint and where "there can be no suggestion that [defendant] did
not receive these letters").  Defendants did not appear in this

-15-

lawsuit until it became clear that they would have to pay plaintiff by way of a default judgment. Under these circumstances, this Court concludes that defendants "have made a conscious decision not to participate." Continental Ins. Co. v. Huff Enter. Inc., 2009 WL 3756630, *4 (E.D.N.Y. Nov. 6, 2009); see also Am. Alliance 92 F.3d at 61 (defendant's "strategic decision to default" is proper grounds for denying a motion to vacate a default judgment).

B.   Meritorious Defenses

Defendants also argue that the default judgment should be vacated because they have raised meritorious defenses. In order to proceed in this case, they do not need to establish their defense conclusively, but they must present facts that "if proven at trial would constitute a complete defense." McNulty, 137 F.3d at 740; Enron, 10 F.3d at 98. The evidence submitted "is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." Enron, 10 F.3d at 98.

Although defendants do not proffer a clear enumeration of their defenses, it appears from the various affidavits submitted by defendants and their counsel that their defenses are: (1) lack of notice of their default on the debt from Paradigm or plaintiff, (2) lack of notice of the assignment of Paradigm's interest in the Note and the Guaranty to plaintiff, (3) defendants' exercise of the option to extend the payment term under the terms of the Note, (4) lack of notice of substitution of plaintiff's counsel, (5) partial payments

had been made to Paradigm and Paradigm refused to accept payment without offering an explanation, (6) plaintiff acted in bad faith by refusing to step forward sooner or to negotiate with defendants' other creditors to reach a global settlement and (7) champerty. Defendants further assert that they should have an opportunity to assert a counterclaim against plaintiff for violating its "obligation to make itself known to borrowers and to disclose its whereabouts to enable the borrower to contact and deal with [it]," thereby causing "significant damages" by derailing settlement with other creditors. Ct. doc. 16 at 10 (part of Stark Aff.).  They claim that plaintiff's conduct went so far as to cause defendants' default.  Id.

     As an initial matter, many of these defenses are precluded by the express waiver terms of the Note and Guaranty.  See ct. doc. 1, Exs. A at 8-9 (borrower waives, inter alia, demand of payments or default, notice of default and any counterclaim or set-off), B at 3-5 (obligations of guarantor is not affected by, inter alia, lack of notice of default, assignment of any right or interest or acceptance of checks).  Furthermore, New York courts have consistently held that absolute and unconditional guaranties of the type signed by the individual defendants[5] waive any defense or counterclaim that the guarantor might assert.  See HSH Nordbank AG New York Branch v. Street, 421 Fed. App'x 70, 73 (2d Cir. 2011) (citing cases). However, this Court will nonetheless examine the merits of the defenses raised.

_____

     [5] See discussion of Guaranty infra, at 28-29.

As this Court has discussed above, the defendants' bear the consequences of any failure on their part to receive litigation papers, which were mailed to the addresses reported on the Secretary of State's website and which continue to appear as their addresses on the website.  It follows that if defendants did not receive notification that they had defaulted on the Note, which was sent to all four corporate defendants, this too was due to their failure to update their publicly-filed address and to provide written notice in accordance with the terms of the Note.  Moreover, the Note clearly provided that upon defendants' default in payment, the holder was entitled to collect the entire debt without providing notice of demand.  Ct. doc. 12, Ex. A at ¶ 5.1; see also Long Island Sav. Bank of Centereach, F.S.B. v. Denkensohn, 222 A.D.2d 659, 659 635 N.Y.S.2d 683, 684 (2d Dep't 1995) (rejecting defendant's argument that foreclosure judgment should be overturned because he did not receive notice of acceleration of mortgage debt).

Defendants' argument based on the lack of notice that the Note had been assigned to plaintiff also fails.  The Note signed by defendants, as well as the Servicing Agreement between plaintiff and Paradigm, confirm that defendants were obligated to pay Paradigm, which would receive and pass along monies owed to plaintiff.  See ct. doc. 1, Exs. A at 1, B at 1-2, Ex. C at 1-2.  Contrary to defendants' assertion that an assignee of a mortgage is required to give notice to the mortgagor, New York law is clear that "no such duty exists." U.S. Bank, N.A. v. Flynn, 27 Misc.3d 802, 807, 897 N.Y.S.2d 855, 860

(N.Y. Sup. 2010). "It has long been held that a mortgagor may continue to deal with the mortgagee in making payments until he has received notice of the assignment of the mortgage" and that absence of such notice only excuses a mortgagor from paying the new holder of the Note, not from making payment under the original terms of the Note. Ifill v. Boyd, 18 Misc.3d 1127(A), *2, 856 N.Y.S.2d 498 (Table) (N.Y. Sup. 2008) (internal quotations omitted); see also MCC Dev. Corp. v. Perla, 23 Misc.3d 1126(A), *3, 886 N.Y.S.2d 68 (Table) (N.Y. Sup. 2009) (stating that notice to a debtor "is not required for an effective assignment" except as a defense of bona fide payment to assignor); General Motors Acceptance Corp. v. Clifton-Fine Cent. School Dist., 85 N.Y.2d 232, 235, 647 N.E.2d 1329, 1330 (1995) ("It is clear that absent notice of an assignment and notice that the debtor should pay the assignee, the... debtor is authorized to pay the assignor"). Moreover, defendants waived "notices of all kinds, except for notices expressly provided for" in paragraph 7.1 of the Note. Ct. doc. 12, Ex. A at 8. Thus, they are foreclosed from arguing that lack of notice of the assignment excuses their default because "the plain language of the [Note] advised [defendant]... of the fact he would not necessarily receive notice" of future assignments. Flynn, 27 Misc.3d at 807, 897 N.Y.S.2d at 860.

Furthermore, defendants had constructive notice of the assignment a month after it was signed when it was recorded with the New York City Office of the City Register. See ct. doc. 18 at 9, Ex. A at 2; N.Y.C. Dep't of Finance, Office of the City Register (follow

-19-

http://a836-acris.nyc.gov/Scripts/DocSearch.dll/DocID; then enter 2008000400600 in City Registry File Number text box); see also U.S. Bank, N.A. v. Squadron VCD, LLC, 2011 WL 4582484, *6 (S.D.N.Y. Oct. 3, 2011) (recordation of an assignment of a mortgage "serves to put the world on record notice of the transfer of rights") (citing HSBC Bank U.S.A Nat'l Ass'n v. Delacadena, 25 Misc.3d 1216(A), *2, 901 N.Y.S.2d 907 (Table) (N.Y. Sup. 2009)).  In recording the transfers, Paradigm and plaintiff put the world, including defendants, on notice of the transfer of rights under the Note and the Guaranty. Defendants' claims that they were unable to locate the assignee falls flat when a simple search of the New York City Department of Finance website would have yielded plaintiff's identity.

Defendants' final notice argument concerns the purported lack of notice when plaintiff changed counsel.  Defendant Stark complains that he was never notified of Mr. Ruta's substitution for Mr. Felder. Ct. doc. 16 at 9 (part of Stark Aff.).  However, he does not explain how defendants were adversely affected, nor do defendants cite any authority for the proposition that such a failure to give notice undermines plaintiff's right to collect.  Since the change of counsel occurred after defendants defaulted in this suit, defendants cannot claim that their lack of notice affected in any way their inaction in this lawsuit.  In any event, it is clear from e-mails provided by plaintiff that defendants had actual notice of this change by August 2010 at the latest, four months before they moved to vacate the default judgment.  See ct. doc. 18, Ex. D at 5.

Defendants also claim that they did not default in payment of the Note and the Guaranty on the Maturity Date because they exercised an option under the Note to extend the payment term for one year. In order to exercise that option to extend the term of the Note for one year, the Note required that defendants: provide written notice of their intention to extend the term, be current on payments and deliver with the notice a fee in the amount of 2% of the outstanding balance. Ct. doc. 12, Ex. A at ¶ 12.1. In their motion to vacate, defendants simply assert that, "[w]e exercised that option" but fail to describe the steps they took to comply with the Note. They state in their reply in support of vacatur only that "it is quite apparent" that they extended the loan because they had made monthly payments and provided notice. Ct. doc. 20 at 3. Such generalized statements, again, are grossly inadequate to show that they took the necessary steps to extend the payment term.

First, defendants provide no evidence that they sent proper written notice. Also, although plaintiff concedes it was originally wrong in contending that defendants had not paid the requisite installments of interest for July, August and September, ct. doc. 21 at 1-2, defendants demonstrate in their own papers that they were not current in payment and had not paid all the outstanding interest in order to qualify for an extension of the term.

As a preliminary matter, under the Note, a late charge of 6% is imposed on any payments not paid within five days of the date due and such a "late fee shall not be compounded on prior late fees, but

rather, only on the amount outstanding exclusive of prior late fees."
Note at ¶ 6.2.  Paragraph 4.1 of the Note provides that the payee has
the option to apply installments in the following order:  any costs
of collection, unpaid costs and balances of advances, late charges
due, interest due and principal balance.  Id.  Plaintiff contends,
and defendants do not dispute, that defendants were late in paying
the installments due on May 1 and June 1 and never paid the late
charge of $1,750 (6% of $29,166.67) for these two months.

In claiming they paid the July installment due, defendants
provide copies of two canceled checks of $14,000, one dated July 9,
2009 and the other July 23, 2009.  Ct. doc. 20 at 2, 10-13 (part of
Ex. D).  Clearly, these two checks were both untimely and fell more
than $1000 short of the required monthly payment.

As proof for the August and September payments made, defendants
provide an unsworn response filed by their counsel attaching copies
of certain checks and a chart purportedly summarizing checks
disbursed from SYC Realty's bank account in September 2009.  Ct. doc.
20 at 3 (¶ 4), 14-20 (part of Ex. D).  Defendants do not explain how
they created the chart in Ex. D.  Id. at 3 (¶4), 18.  As defendants
admit, the check numbered 4753, which was dated August 23, 2009 and
intended to pay half of the August payment, was dishonored and
redeposited.  Ct. doc. at 3 (¶ 4), 14-17.  Both checks cleared the
account in September.  More significantly, although defendants refer
to their chart as proof that checks numbered 4769 and 4770 were
sufficient to cover all the payments owed through September, id. at

3, ¶ 4, there are glaring discrepancies between the entries on the chart for those checks and the copies of the checks provided. Defendants claim both checks cleared the account on September 23, 2009 and list check #4769 as being in the amount of $71,400.00. Id. and at 18. However, the copies of the checks provided show that both checks are dated October 1, 2009, the face amount of check #4769 is $14,583.34 and the checks were negotiated on October 13, 2009. Id. at 7, 9. Id. at 2, 14-18 (part of Ex. D). Thus, based on the credible evidence presented, as of October 1, 2009, defendants had failed to pay all the installments of interest and late charges incurred as of that date. This is more specifically set forth in the Appendix, which shows that defendants still owed $9,916.32, even assuming checks numbered 4769 and 4770 had been paid on October 1, 2009.

Finally, there is no indication whatsoever that defendants paid the requisite 2% fee (or $50,000) to exercise the option for an extension. In short, there is no evidence that defendants had complied with any of the requirements for an extension of the Note term. In any event, the defendants were still in default in payment at the end of any extended term by the time they appeared in this action.

Although defendants seeking to overturn a default judgment are not required to "establish [their] defense conclusively," they must present more than conclusory assertions to prove their merit of their defenses. See New York v. Green, 420 F.3d 99, 109 (2d Cir. 2005)

-23-

(quoting McNulty, 137 F.3d at 740). Because defendants proffer no evidence to support their bare assertion that they exercised the option to extend could possibly succeed at trial, this argument is meritless.

Defendants further complain that Paradigm improperly rejected two checks that they attempted to tender in November 2009. Ct. doc. 16 at 8-9 (part of Stark Aff.). The two checks, dated December 1, 2009 and amounting to $29,166.67, were clearly too little, too late. Ct. doc. 20 at 21-22. As discussed above, defendants were in default in payment as of the Maturity Date on October 1, 2009, and the rejected payments were insufficient to cover the outstanding interest for September, October and November.

Under New York law, a noteholder such as plaintiff and Paradigm have no obligation to accept partial payments following an obligor's default. See, e.g., United Companies Lending Corp. v. Hingos, 283 A.D.2d 764, 766, 724 N.Y.S.3d 134, 136-37 (3d Dep't 2001) ("Having failed to timely tender funds sufficient to... fully cure their default, defendants cannot now be heard to complain that plaintiff wrongfully rejected the sums in question"); Credit Based Asset Servicing and Securitization LLC v. Castelli, 275 A.D.2d 542, 544, 711 N.Y.S.2d 625-26 (3d Dep't 2000).

Defendants also vaguely contend that not only has plaintiff violated a duty of good faith and fair dealings but that they are entitled to bring a counterclaim "arising out of the Plaintiff's defaults and refusal to work with Broadway Bank [another creditor of

defendants] towards a resolution of the issues." Ct. doc. 20 at 3.
The facts of the cases that defendants cite in support of this
contention have little in common with the present situation, nor do
they provide any support for the proposition that a creditor is
obligated to settle claims with a debtor and the debtor's other
creditors.  In the cited cases, the plaintiffs sued defendants for
default on a debt after they had precipitously terminated an ongoing
business relationship or refused to provide either credit or
information that was necessary to continued functioning of the
agreement between the parties.  See Sec. Pac. Nat'l Bank v. Evans, 62
A.D.3d 512, 878 N.Y.S.2d 732 (1st Dep't 2009); Bombadier Capital v.
Reserve Capital Group, 295 A.D.2d 793, 744 N.Y.S.2d 232 (3d Dep't
2002); Sterling Nat'l Bank v. Goldberg, 277 A.D.2d 45, 715 N.Y.S.2d
409 (1st Dep't 2000).  Here, plaintiff has taken no action to
undermine the contract between the parties; to the contrary,
defendants defaulted on the Note long before plaintiff declined to
engage in settlement discussions with defendants' other creditors.
Plaintiff plainly has no relationship with defendants' creditor,
Broadway Bank, that could give rise to an obligation of good faith
and fair dealing.  As discussed, both the Note and New York law are
clear that plaintiff has no obligation to settle with defendants for
any amount less than the balance due under the Note and the Guaranty.

   Defendants' final asserted defense is that plaintiff has engaged
in champerty.  Ct. doc. 16 at 5.  Champerty is the practice, outlawed
in New York, of purchasing an interest, such as a promissory note,

with the intent of bringing suit for improper purposes.  See N.Y.
Jud. Law § 489; <u>Trust for the Certificate Holders of the Merrill
Lynch Mortgage Investors, Inc. v. Love Funding Corp</u>, 13 N.Y.3d 190,
199, 890 N.Y.S.2d 377, 381 (2009).  The New York Court of Appeals
explained in the only decision cited by defendants to support this
argument that the doctrine has been narrowly construed in New York to
"prevent[] attorneys from filing suit merely as a vehicle for
obtaining costs," which the Court explicitly distinguished between
filing suit for the purpose of protecting "an independent right of
the assignee."  <u>Id.</u> at 199, 382.  That is, an attorney violates the
champerty statute when he buys a promissory note or other type of
interest with the sole intention of making money from litigation of
the claim.  In contrast, a party does not engage in champerty if it
"acquires a debt instrument for the purpose of enforcing it."  <u>Id.</u> at
200, 382.

As in <u>Certificate Holders</u>, if plaintiff's "purpose in taking
assignment of [defendants'] rights... was to enforce it rights, then,
as a matter of law, given that [plaintiff] had a preexisting
proprietary interest in the loan, it did not violate Judiciary Law §
489(1)."  <u>Id.</u> at 201-02, 383.  It is clear from the record that
plaintiff acquired a 92% interest in the Note immediately upon
execution of the Note by defendants, while Amina Tawfik received an
8% interest.  Ms. Tawfik assigned that 8% interest to plaintiff
several months after defendants' default.  See Compl., ¶ 13.  There
is nothing to suggest that plaintiff purchased the remaining rights

and interest from Ms. Tawfik for any purpose other than to pursue its right to collect on the debt.  There is no indication whatsoever that any of plaintiff's counsel have acted improperly or has any connection to plaintiff aside from representing its interests in this lawsuit.

C.    Prejudice

The third factor that a court must analyze in a motion to vacate a default judgment is the prejudice to plaintiff that will result. Delay alone is insufficient to establish prejudice.  E.g., Enron, 10 F.3d at 98.  Prejudice must be established by demonstrating injury to movant that will result from vacating the default, such as "increased difficulties of discovery, or... greater opportunities for fraud and collusion." Davis, 713 F.2d at 916 (internal quotations and citations omitted).  Plaintiff has demonstrated that it is likely to suffer severe prejudice if the default is vacated.  Because of the apparent financial problems of the defendants, which have resulted in at least one other lawsuit brought by another creditor, see ct. doc. 18, 8 Ex. E at 2, any further delay could jeopardize plaintiff's ability to collect on a judgment.  See, e.g., In re Suprema Specialties, Inc., 330 B.R. 40, 54 (S.D.N.Y. 2005) (finding prejudice established where "the Trustee... had a legitimate concern for [its ability] to collect any judgment, and for the possibility that appellants were engaged in a deliberate strategy of bad faith delay").

In sum, plaintiff is entitled to default judgment because of the defendants' willfulness, their undisputable default in payment and potentially serious prejudice to plaintiff if the action is reinstated.

D.  Damages

Plaintiff is entitled to collect on the Note and Guaranty if "the note and mortgage are produced to the Court along with proof that the mortgagor has failed to make payments due under the note." Squadron VCD, 2011 WL 4582484 at *4; see also Sovereign Bank v. USA Fin. Servs., LLC, 2011 WL 6211145, *1 (S.D.N.Y. Dec. 14, 2011) (internal quotations omitted).  Defendants do not dispute either the validity of the Note or that they failed to make payment under the terms of the Note, and I have concluded that their arguments seeking to reinstate this action are meritless.  Plaintiff is therefore entitled to recover the full amount due according to the terms of the Note.

Plaintiff also seeks entry of a default judgment against he individual defendants.  The extent of default damages that may be assessed against them must be determined in accordance with the terms of the guaranty they signed.  Chase Manhattan Bank, N.A. v. American Nat. Bank and Trust Co. of Chicago, 93 F.3d 1064, 1073–1074 (2d Cir. 1996) ("Under New York law, guarantee agreements must be strictly construed according to their terms").  If a guaranty is unconditional and does not limit in any way the obligations of the guarantor, the guarantor's liability will be equal to that of the principal debtor.

European American Bank v. Lofrese, 182 A.D.2d 67, 73, 74, 586
N.Y.S.2d 816, 819, 820 (2d Dep't 1992).

The guaranty that the individual defendants signed is
unconditional, providing, inter alia, that:

> Guarantor hereby irrevocably and unconditionally
> guarantees to Lender the full and prompt: payment when due of
> the principal, interest and other sums due thereon, whether
> now existing or hereafter incurred, and all other obligations
> whenever incurred by Borrower to Lender with respect to the
> aforesaid loan, under or through the Loan Documents when and
> as the same shall become due and payable, whether at the
> stated maturity thereof, by acceleration or otherwise [...]
> Each and every default in the payment of the principal or
> interest or any other sum due under or borrowing in accordance
> with the Loan Documents shall give rise to a separate cause of
> action hereunder[...]
> The obligations of Guarantor under this Guaranty shall be
> joint and several, absolute and unconditional, and shall
> remain in full force and effect until the entire principal,
> interest and all other sums due under the Loan Documents have
> been paid in full and all costs and expenses, if any... shall
> have been paid in full.

Ct. doc. 12, Ex. B at 2-3. Thus, the full amount of any default
judgment against the corporate defendants should also be assessed
against the individual defendants.

As discussed, there is no serious dispute that defendants have
defaulted on the Note. Even prior to the Maturity Date, the
defendants were repeatedly late, conduct which, under the terms of the
Note constitutes events of default and triggers acceleration of the
entire principal balance and all unpaid interest without notice. Ct.
doc. 12, Ex. A at ¶ 5.1. Defendants' main response is that they have
made some of the monthly installments of interest due on July, August
and September 2009, albeit all of them late. Plaintiff acknowledges

that it did not carefully credit payments after defendants' defaulted in payment and has revised its calculation to give defendants a credit of $87,500.01 for those three months of interest. Ct. doc. 21 at 2. In fact, copies of the checks that defendants produced to show payments through the Maturity date amount to only $86,279.31, slightly less than the amount required for the three months.

However, plaintiff now seeks only the $2.5 million principal outstanding on the loan, a $200 fee for the August 2009 returned check, late fees of $1,750 for five months (May 2009 through September 2009) totaling $8,750 and interest at the default rate from the Maturity Date. Ct. doc. 21 at 2. I recommend that the Court calculate default damages based on the $2,589,500 amount sought by plaintiff, even though it is less than the amount actually due.[6]

The Note provides default interest at a rate of 2% per month for every month and fraction of a month until actual repayment. Ct. doc. 12, Ex. A at ¶ 6.1. Thus, default interest accrues at an annual rate of $602,148.00 and a daily rate of $1,672.63 based on a 360 day year, as set forth in the Note. See ct. doc. 12, Ex. A at ¶ 1. Accordingly, interest on the outstanding amount of principal and charges sought by plaintiff from October 1, 2009 to March 15, 2012, a period of two years and 167 days, is $1,204,296 [($602,148.00 x 2) + (167 x $1,672.63)] and the total amount owed by defendants is $3,992,575.21.

---

[6] Besides crediting defendants for more interest than they actually paid, plaintiff seeks less late charges than it is entitled to, as discussed in the Appendix.

<u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that defendants' request to vacate entry of default be denied and that plaintiff be awarded $3,992,575.21 plus any default interest that accrues after March 15, 2012 at the daily rate of $1,672.63. Plaintiff may file a motion to recover attorneys fees by March 12, 2012. Defendants' response is due March 17, 2012. Plaintiff may submit a reply no later than March 22, 2012.

This report and recommendation will be filed and a copy sent electronically to the parties on this date. Any objections must be filed with the Clerk of the Court, with a copy to Judge Townes, on or before March 15, 2012. Failure to file timely objections may waive the right to appeal the District Court's Order. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**SO ORDERED.**

Dated:     Brooklyn, New York
           February 27, 2012

___/s/_____
MARILYN DOLAN GO
UNITED STATES MAGISTRATE JUDGE

# APPENDIX

## Schedule of Payments and Charges Due as of 10/1/09

| Payment Month, *due date* or date of payment | Amt. of Payment | Payment owed | Monthly Payments of interest and charges due* | Cumulative unpaid payments & late charges |
|---|---|---|---|---|
| *5/5/09* | | $1,750.00 | $1,750.00 | $1,750.00 |
| *6/5/09* | | $1,750.00 | $1,750.00 | $3,500.00 |
| **July** | | | | |
| *7/1/0* | | $29,166.67 | | |
| *7/5/09* | | $1,750.00 | $30,916.67 | $32,666.67 |
| 7/9/09 | $14,000.00 | | *(July fully pd. on 9/2)* | $18,666.67 |
| 7/23/09 | $14,000.00 | | | $4,666.67 |
| **August** | | | | |
| *8/1/09, 8/5/09* | | $29,166.67 | | $35,583.34 |
| 8/5/09 | | $1,750.00 *(July, Aug. overdue)** | $30,916.67 *(Aug. fully pd. on 9/2)* | $37,333.34 |
| **September** | | | | |
| *9/1/09* | | $29,166.67 | | $66,500.01 |
| 9/2/09 (date bounced ck. cleared) | $14,583.67 | *($2,916.67 applied to July installment, $11,667 applied to Aug. installment)* | *($19,249.67 balance remaining.)* | $51,916.34 |
| *9/5/09* | | $1,750.00 *(Aug., Sept. overdue)** | $30,916.67 | $53,666.34 |
| 9/10/09 | $14,583.34 | *( applied to Aug., balance of $4.666.33 remaining)* | | $39.083.00 |
| **October** | | | | |
| 10/1/09** | $14,583.38 | *($4.666.33 applied to Aug,, $9,916.67 applied to Sept. installment, $21,000 balance)* | | $24,499.62 |
| 10/1/09 | $14,583.30 | *(applied to Sept. installment)* | *($6,416.70 owed on Sept. installment)* | **$9,916.32** *(including May, June charges)* |

\* Even though permitted under the Note, plaintiff does not seek a second late charge for installments overdue a second month. The additional late charges are noted here, but calculations are based on a single late charge for the July and August installments, even though each was late for two months.

\** The payment credited here is $14,583.34, as evidenced by the copy of the check number 4769, rather than the $71,400 claimed by defendants in the chart of checks they submitted.